Rule 35(a) "is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action." *United States v. Abreu-Cabrera*, 64 F.3d 67, 72 (2d Cir. 1995). It is "not intended to afford the court the opportunity to . . . simply change its mind about the appropriateness of the sentence." *Id*. The Court carefully considered Mr. Lawrence's arguments for a sentence of probation with six months of home confinement, as well as all other arguments made by counsel, in fashioning a sentence that was sufficient but not greater than necessary to achieve the sentencing goals described in 18 U.S.C. Section 3553(a). The Court also considered all of the statutory factors, including Section 3553(a)(2)(A), in light of the factual record and the statutory sentencing goals. The Government's statements about which Mr. Lawrence complains played no part in the sentencing. Because there was no "arithmetic, technical, or clear error" in the imposition of Mr. Lawrence's sentence, his motion under Rule 35(a) is denied. Fed. R. Crim. P. 35(a).
So ordered.

/s/ Hon. Alvin K. Hellerstein
June 22, 2021



June 21, 2021

**BY ECF**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      **RE:**    <u>United States v. David Wagner, *et al.*, 19-cr-0437</u>

Dear Judge Hellerstein:

      We represent defendant Marc Lawrence, and we respectfully submit this letter pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure. The current case law provides that the Court's jurisdiction under Rule 35(a) extends to only fourteen days after sentencing, and that any action by the Court must be taken within that time frame. *See U.S. v. Aguilar-Reyes*, 653 F.3d 1053, 1055 (9th Cir. 2011). Mr. Lawrence was sentenced on June 9, 2021, and <u>the fourteen day period runs until June 23, 2021</u>. We respectfully request the Court address Mr. Lawrence's request below on or before <u>June 23, 2021</u>.

      During Mr. Lawrence's sentencing on June 9, 2021, the Court asked the Government about the United States Probation Office's ("USPO") recommendation of 48 months' imprisonment. The colloquy proceeded as follows:

> THE COURT:    Probation recommends 48 months, but do you think they're low?
>
> MR. RAVI:    **Your Honor, I believe that they are**. And I think one of the reasons is that it comes to the third phase of this scheme, which is the Cliniflow stage. That's after **Mr. Lawrence had already recruited 15 victims, all of them who left and got paid nothing** and lost their investments, and he and Wagner decided to—once they realized Downing could no longer be a vehicle to recruit victims, they used this new vehicle called Cliniflow . . .

(Sentencing Transcript at 20-21; emphases added; entire transcript attached hereto as Exhibit A).

Page 2 of 4
June 21, 2021

The Government's statement that "Mr. Lawrence had already recruited 15 victims, all of them who left and got paid nothing"—made in response to a question from the Court, to support a longer sentence than that recommended by the USPO—is plain error.

Payroll records produced by the Government show it is not the case that those recruited individuals "got paid nothing." Rather, the records show that these individuals received at least $650,000.00 in salary and expense reimbursements, including Thomas Hickman, who received $120,416.72; James Fries, who received $136,458.36; and Shane Hawes, who received $136,458.36. (*See* summary table attached as Exhibit B). In addition, numerous other individuals not recruited by Mr. Lawrence also received substantial payments from Downing.

We have brought this issue to the attention of the Government. (*See* June 18, 2021 Letter to Government, attached as Exhibit C).[1] The Government agrees that individuals were in fact paid (without having checked the exact amounts), but takes the position that this should not impact the sentence of 55 months given to Mr. Lawrence. (The Government requested we include their response in this letter, and we include it in full at the end).

We differ with the Government's view. This issue goes directly to Mr. Lawrence's state of mind, to Mr. Lawrence's culpability relative to Mr. Wagner, and to the force of the USPO's 48 month recommendation.

The Government's statement creates the impression that Downing was a total sham: an entity where there never was any product, no one got paid, and no one did any work. This is not the case.

Downing's 3si product was a development stage voice recognition technology to enable cardiothoracic surgeons to improve operating room performance. Invented by Dr. Marco Zenati, Chief of Cardiothoracic Surgery at the VA Boston Healthcare System and Professor of Surgery at Harvard Medical School, it was installed for clinical evaluation and used at the VA Hospital in Boston and the University of Virginia Medical Center, and a White Paper was produced by the VA Boston Hospital validating the clinical viability of the technology. The 3Si product was similar to many disruptive medical technologies—which have a long cycle to market.[2] While Mr.

---

[1] Counsel for Mr. Lawrence received the transcript of the proceedings on the afternoon of June 15. After carefully checking the accuracy of the Government's statement, we brought the issue to attention of the Government on June 18, informing the Government we would bring the issue to the attention of the Court on June 21.

[2] With respect to the product, the Government stated at sentencing: "Defense counsel is right that the 3si, the product that he referenced, was a real prototype, but at no time was it at all the type of product that was represented to these victims to get them to invest. It was never marketable. It was never sold over all those years." (Exhibit A (Transcript) at 18:3-7). The Government fails to consider how new medical products, including the 3si product, are developed, tested and brought

Wagner may have intended all along for Downing to be a scheme, that was not immediately clear to his employees—including Mr. Lawrence, who put in many hours on behalf of the business operations and believed in the product.

Mr. Lawrence fully accepts responsibility for his conduct—he misrepresented the state of the company when recruiting people, particularly once Cliniflow was formed. This hurt others greatly, and he is ashamed and regretful.

But Mr. Lawrence was not the architect of the scheme, did not have access to the bank accounts or financial records, did not engage in (or know anything about) a fraud against the state of Rhode Island, did not loot millions from the Company, and did not know Mr. Wagner had done these things. Mr. Lawrence knew people were being paid late or not at all, but also knew that at least partial salaries were being paid to many people and that work was being done by many people.

The Court adopted the USPO's recommendation of 72 months for Mr. Wagner, noting that "there was a certain degree of callousness over and above the criminal conduct that's very hard to accept." (Exhibit D, Transcript of David Wagner Sentencing Hearing dated January 11, 2021, at 23:4-7). Here, there is no such callousness. Although the Government agrees that Mr. Lawrence was not as culpable as Mr. Wagner, and acknowledges that Mr. Lawrence met multiple times with them in an effort to cooperate, the Government nevertheless argued that Probation's recommendation for Mr. Lawrence was too low. In making this argument, the Government unfortunately misstated the facts.

Under Rule 35(a), the Court has authority to correct a sentence that results from a government misstatement. *U.S. v. Schenian*, 847 F.3d 422, 423-24 (7th Cir. 2017) (noting that a judge's reliance on a prosecutor's misstatement may constitute "clear error" warranting correction of a sentence).

Mr. Lawrence respectfully requests that the Court exercise its authority pursuant to Rule 35(a) and grant a new sentencing hearing at which the Government can correct its clear error, and at which the USPO's Recommendation can be re-evaluated.

**Government Response:**

The Government respectfully submits that no resentencing is warranted under Rule 35(a). First, the Government does not and has never disputed that some Downing victims did receive salary payments. The record before the Court at sentencing was clear that while some victims received salary payments, many victims did not receive any payments at all and Mr. Lawrence earned almost as much in salary as all of the victims combined. (*See, e.g.*, PSR ¶¶ 17, 39-41, 54.) Defense counsel also admitted this point. (*See* Sentencing Tr. at 8 (Defense

---

to commercialization. New products are pre-marketed to hospitals under a "release for talk," as they are being clinically tested, and this was done with the 3si product.

Counsel: "I believe Mr. Lawrence ultimately received less than half of [his salary], which is still, again, more than I think all of the victims, many of whom never received any salary at all.") Second, the Court did not make any "clear error." In response to the Government's statement at issue, the Court correctly summarized the Government's argument as to why a sentence above Probation's recommendation was appropriate. (*Id*. at 21 (The Court: "To make this a summary, Mr. Lawrence . . . knew that things were bad, that he was telling lies, that he was inducing investors to get into a scheme where they lost money and would not have gone into that scheme had they been told the truth, and doubled down."). This summary by the Court was not based on any misimpression as to salary payments, and properly focused on Mr. Lawrence's knowledge of prior victims losing their investments which was the core criminal conduct at issue. Indeed, the loss calculation under the Guidelines for Mr. Lawrence was based solely on investment losses to victims, and did not include any loss due to failure to pay salary. Finally, Rule 35(a) "is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence." *United States v. Goddard*, No. 17 Cr. 439 (LAP), 2018 WL 4440503, at *1 (S.D.N.Y. Sept. 17, 2018) (quoting *United States v. Abreu-Cabrera*, 64 F.3d 67, 72 (2d Cir. 1995)). The defendant has failed to establish any basis for relief and thus the defendant's request for a resentencing should be denied.

\* \* \*

We are available to be heard on this issue any time at the Court's request.

Respectfully submitted,

/s/ Jonathan Harris

cc: AUSA Jilan Kamal, Esq.
AUSA Sagar Ravi, Esq.